IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELISA J. YOCHIM,

                  Plaintiff,

      v.

BENJAMIN S. CARSON, SR.,
U.S. Secretary of Housing
Urban Development,

           Defendant.

Case No. 16 C 4926

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I.  BACKGROUND

For fifteen years the Plaintiff Elisa J. Yochim ("Yochim" or "Plaintiff") has served as the primary procurement attorney for Region V of the U.S. Department of Housing and Urban Development's ("HUD") Office of General Counsel, which is in Chicago, Illinois. She handled standards of conduct and procurement integrity issues. Initially, she reported to Regional Counsel Courtney Meyer ("Meyer").  In 2008, she applied for the position of Deputy Regional Counsel, but she lost out to Janet Elson ("Elson") to whom she began to report.  In October 2012, the Office of General Counsel underwent a restructuring which required attorneys to develop skills across a range of legal fields, with the intent to move away from specialization.  The restructuring caused changes

to management of the Chicago office. HUD created a new position, Associate Regional Counsel, to supervise a team of trial attorneys across multiple areas of litigation. Plaintiff also applied for this position, but it was given to Lisa Danna-Brennan ("Danna-Brennan"), to whom Plaintiff was directed to report. Plaintiff's duties were changed to include administrative responsibilities such as space and file management, training, and orientation. On July 18, 2012, After losing out to Danna-Brennan, Plaintiff initiated HUD's EEO complaint process, contending that she was discriminated against because of her age. She filed a formal complaint against HUD on September 12, 2012. That complaint does not directly relate to this suit except with respect to alleged retaliation.

## A. Failure to Accommodate

Plaintiff suffered from bi-lateral carpal tunnel syndrome for many years. In November 2012, she underwent release surgery on her right dominant hand. Throughout the month of November, she worked from home when she could or otherwise took sick or annual leave. She experienced diminished righthand strength because of the surgery and she received substantial physical therapy to rebuild her strength. On December 5, 2012, Plaintiff e-mailed Meyer, Elson, and Danna-Brennan requesting approval to work from home during the days for which she had not requested leave. The

HUD policy for allowing employees to work from home, or telework, was that the practice was encouraged, but was subject to approval of an employee's supervisor.  Her request was approved.  Her December e-mail also requested that she be approved to work from home during the month of January 2013.  Her request was supported by a work status report from her surgeon which noted "limited use of injured part" but noted no functional limitations.  The report further noted that riding public transportation (she lived in Glenview and worked in the downtown federal complex) which could require holding on with the right hand "may be a safety concern," and she would be better off "working at home" until February 1, 2013.

At this time a HUD employee could initiate a request for a reasonable accommodation through either their first-line supervisor or the agency's Reasonable Accommodation Branch (the "RA Branch").  The supervisor and employee were required to engage in an interactive process and the RA Branch facilitated communication between supervisors and employees.  Its membership included an administrative officer, a representative from Labor and Employee Relations, a representative from the office of General Counsel, and a representative from the office of Departmental Equal Employment Opportunity.  The RA Branch was to determine whether the employee had a medical condition that impacted at least one

major life function, and whether there were barriers to the employee performing her essential job duties. If the employee qualified for a reasonable accommodation, the supervisor could determine what accommodation was effective. The supervisor could approve an accommodation request in full or in part or disapprove it entirely. A denial automatically triggered a review by the RA Branch.

Upon receipt of her first request for a reasonable accommodation, Plaintiff was denied the ability to work from home full time but offered a variety of alternative proposed accommodations, including: a compressed schedule of four ten-hour days, two by telework at home and two at the office, and the ability to set her start and stop schedule to avoid rush hour commuting. Plaintiff apparently did not consider this an offer of accommodation because she did not respond to this offer. She did not work a single day in the office in the month of January. Instead, she teleworked one to two days a week and took leave on the days she was scheduled to work in the office. Her position is that she was entitled to take two telework days at home without any reason. In February 2013, Plaintiff sought to change her telework days which was declined by Danna-Brennan. Later in February 2013, she took sick leave on the days that telework was not approved.

In March 2013, Plaintiff made what the parties refer to as her second request for an accommodation. She requested that she be allowed to work full time at home until at least June 30, 2013. In support of her request, she filed the reports from her surgeon, Dr. Benson, and, in addition filed a letter from Dr. Wisterberg, an internist and her primary care physician (and family friend). In his letter, Dr. Wistenberg cleared her with working at home but expressed his concern with her commute downtown because her right hand was not strong enough to commute by train. The doctor had referred her to a physical therapist in her home town of Glenview. On April 2, 2013, Plaintiff failed to appear in one of her office in-days. Danna-Brennan advised her that while her second request was pending, she was not approved to work full time at home and sick days would not be approved on days she was able to work but only willing to work at home.

On April 4, 2013, her request for accommodation was partially approved, offering voice recognition software, a compressed schedule, three days of telework, and the right to leave 15 minutes early to facilitate her access to a convenient train. This decision apparently was mistakenly characterized as a denial which automatically triggered a review by the RA Branch. The RA Branch met and offered the same alternative accommodations but, in addition, allowed her to work from home for two hours in the

mornings to avoid the rush hour. Plaintiff accepted this accommodation.

In August 2013, Plaintiff submitted her third formal request for accommodation, seeking this time to telework three days per week for six months and to be allowed an additional two days of telework per week as needed due to pain, medical appointments, and recovery. She submitted another letter from Dr. Wisterberg in support of her request. The RA Branch and management evaluated her request. Management partially approved her request, and again offered a variety of alternative accommodations, including: additional paralegal assistance, an ergonomic assessment, compressed schedule, referral to para-transit resources, and generous leave approval. Plaintiff disagreed with this decision and corresponded with a representative of the RA Branch who forwarded to her the procedures to follow to obtain a reconsideration, which she declined to utilize.

### B. Hostile Work Environment

Plaintiff claims that because of her protected activity in filing EEO complaints that she was treated to a hostile work environment. She lists as specific instances of hostility the following from her complaint in this case:

Count II - Retaliatory Hostile Work Environment/ Failure to engage in interactive process:

115.) Beginning no later than January of 2013, Defendant intentionally subjected Plaintiff to a retaliatory hostile and abusive work environment by the following actions, among others: denying Plaintiff's request to change telework days on February 7, 2013; denying Plaintiff's request for situational telework on February 26, 2013 and other occasions; threatening to deny Plaintiff's sick and annual leave on April 2, 2013; threatening to remove Plaintiff's telework privileges on April 2, 2013; unreasonably denying all or part of Plaintiff's requests to make-up religious leave on numerous occasions between January of 2012 and May of 2015; unreasonably denying all or part of Plaintiff's requests to work credit hours on numerous occasions between January of 2012 and May of 2015; issuing her an unwarranted Official Reprimand in June of 2014; issuing her "Fully Satisfactory" and "Unsatisfactory" annual performance appraisals in January and November of 2014; and suspending her without pay on March 30, 2015.

116.) Additionally, Defendant failed to engage in the interactive reasonable accommodation process in good faith by concealing its partial grant of RA in December of 2012 and the terms of its continuance; denying Plaintiff's RA requests based on inapplicable and erroneous legal reasons; improperly rejecting Plaintiff's medical documentation of her conditions; failing to ask Plaintiff to provide additional medical documentation when insufficient documentation was an alleged reason for Defendant's RA denial; imposing leave restrictions on Plaintiff when she used her sick leave for medical treatment; requiring Plaintiff to submit an unnecessary reasonable accommodation request in April 2014; and delaying her request for a minor variance in her work schedule by two months in April through June of 2014.

It is apparent that the selection of Danna-Brennan, a younger woman to be Plaintiff's direct supervisor, was a recipe for problems. Plaintiff, in Danna-Brennan's view, had been allowed over the years to manipulate the leave system by working extra hours to obtain

compensatory time off called credit hours, and to use religious compensation time to allow her to have four-day weekends. This so-called manipulation permitted her to take approximately one-third of the work days off prior to Danna-Brennan's appointment. She used many of the credit hours to obtain four-day weekends to visit a friend in New Jersey. In turn Plaintiff greatly resented Danna-Brennan's decision to conduct a leave audit which led to a leave restriction complained of by Plaintiff. It was Danna-Brennan's opinion that Plaintiff had been and was attempting to continue to manipulate the system so as to set her own work schedule. It is also apparent that Plaintiff did not wholeheartedly agree with the restructuring of the Office of General Counsel. It was Danna-Brennan's opinion that Plaintiff's use of telework prevented her from conducting appropriate partnering with other attorneys as was contemplated by the restructuring. It was further Danna-Brennan's opinion that Plaintiff's job performance was declining, and she specifically noted that, in her opinion, Plaintiff was failing to follow office protocol and she was not complying with deadline policies and docket management. It was for these reasons she instituted the regimen that Plaintiff complains of in Count II. Both Plaintiff and Danna-Brennan described their respective views in lengthy e-mails to one another.

## C. Title VII and/or Rehabilitation Act Reprisals

Plaintiff's reprisal claims listed in Counts V through XI generally track her complaints that constitute her claim for Hostile Work Environment in Count II. They are as follows: Count V - Suspension of telework on June 20, 2014. (*See* Ex. 50.) This was a part of an "Official Reprimand" issued by Danna-Brennan for failure to abide by the ethics deadlines policy which was adopted on December 20, 2013. It was Danna-Brennan's opinion that Plaintiff's working from home was the cause of the delay in completing work and being in the office would allow closer supervision. There was no effect on her pay because of the reprimand, although she claims that this suspension forced her to utilize her sick leave.

Count VI - Suspension without pay on March 30, 2015. On December 19, 2014, Danna-Brennan issued Plaintiff a Notice of Proposal to suspend for three days without pay. The basis was that Plaintiff was engaged in "rude and disruptive conduct towards a supervisor" and failed to carry out supervisory instructions. On March 24, 2015, the Regional Counsel issued a decision dismissing the charge of rude and disruptive conduct and reduced the proposed penalty for failure to carryout supervisory instructions to a one-day suspension without pay.

Count VII - Issued Unsatisfactory Performance Appraisal on November 4, 2014.  This appraisal was based on Danna-Brennan's observation that Plaintiff's docket was disorganized and that she had ineffective working relationships with her teammates, as well as showing disrespect and unprofessional conduct.  Plaintiff and Danna-Brennan exchanged lengthy e-mails on these subjects, which was described by Defendant as "butting heads."

Count VIII - Placement on Leave Restrictions, April 29, 2013.  This Complaint arises out of Danna-Brennan's decision to crack down on use of credit hours to obtain four-day weekends.  She believed that Plaintiff was manipulating the system.  Between 2009 and 2013, Plaintiff took leave on 339 out of a possible 1,010 work days.  She held that Plaintiff could only earn work credit hours "where necessary to timely complete an imminent project."  Plaintiff's objection to this restriction was that she had always been allowed to earn and use credit hours.  Plaintiff also complains that Danna-Brennan imposed overly restrictive requirements to make up hours for religious leave.  She was forced on occasion to use her annual leave in lieu of working to make up the religious leave.

Count IX - Issuance of "Fully Satisfactory" Rating on Annual performance appraisal on January 23, 2014.  This rating was based on Danna-Brennan's observation that Plaintiff had problems with

timeliness, organization, and communication.  This was the lowest rating Plaintiff had received in her twenty-plus years with HUD. Plaintiff claims that this rating caused her to be denied a performance bonus, although she was unable to quantify any lost bonus.

## II.  **DISCUSSION**

### A.  **Failure to Accommodate**

To succeed on her failure to accommodate claims, Plaintiff must establish that (1) she is a qualified individual with a disability, (2) HUD was aware of her disability, and (3) HUD failed to offer reasonable means to accommodate her disability. *Bunn v. Khoury Enters, Inc.*, 753 F.3d 676, 682 (7th Cir. 2014).  HUD contends that Plaintiff fails on her failure to accommodate claims because she cannot show that she is a qualified individual with disability, and that even if she could show that she was disabled, she cannot show that HUD failed to offer her reasonable accommodation.

To establish that she is a qualified individual with a disability, she must establish that: (1) she had a physical or mental impairment that substantially limited one or more of her major life activities; (2) she had a record of such an impairment, or (3) she was regarded as having such an impairment. *See Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795

F.3d 698, 706 (7th Cir. 2015) (citing 42 U.S.C. § 12102(1)). Here, Plaintiff, after her carpel tunnel surgery, submitted medical documentation that she had "diminished hand strength" and "limited use" of her right hand. Defendant did not see fit to have her examined. Plaintiff contended that there was a range of activities that require "manual dexterity or hand strength of any kind," the most important of which was the ability to grasp a hand rail on a commuter train. However, the record also shows that she could type, use a computer, and was able to perform the essential functions of her job whether at home or at work. Defendant rests its case on the fact that she did not come to work and attendance at the job site is a basic requirement of most jobs, citing *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999).

Plaintiff's response is that she is substantially limited in the activities of "opening doors, holding coffee cups, lifting dishes and teapots, grasping things, doing things that require manual dexterity or hand strength of any kind, cutting food . . . grasping seat railings on moving trains, [and] lifting anything heavier than a pencil." Therefore, she qualifies as an individual with a disability. Because she has difficulty commuting to work by train or by car, and she needed physical therapy, she required an accommodation allowing her to work from home. This need for accommodation was heightened in 2014 when she developed

swollen and painful joints in both hands, arms and lower back, which was diagnosed as inflammatory osteoarthritis and possible Calcium Pyrophosphate Dihydrate Crystal Deposition disease ("CPPD"), in which crystals form deposits in the joints, causing inflammation in the joint.

It appears to the Court that the Plaintiff has made a sufficient showing that she is an individual with a disability. Therefore, the next question is whether Defendant refused her a reasonable accommodation. The record shows that the Defendant, through the efforts of Danna-Brennan and the RA Branch, made numerous suggested accommodations to Plaintiff which for the most part Plaintiff refused. Finally, on April 4, 2013, management partially approved Plaintiff's second request, which included a compressed schedule, three days of telework, and the ability to leave work 15 minutes early on her in-office days for her convenience in commuting. Through a bureaucratic mix-up, her request was official deemed as denied, which triggered a referral to the RA Branch. The RA Branch then convened and offered her the same terms, but with the addition of allowing her to work two hours at home in the morning on her in-office days. Plaintiff acknowledged that this accommodation was in fact acceptable.

The main sticking point between Plaintiff and Danna-Brennan was the refusal to allow Plaintiff to work at home 100 percent of

the time and that she appear at the HUD office to work some of the time, usually two days of the week. According to Danna-Brennan, her refusal to allow Plaintiff to work full time at home was due to the restructuring of the legal staff in 2012 moving away from specialization and requiring attorneys to develop skills across a range of legal fields. This change required cross-training and collaboration among the HUD attorneys so that, for example, Plaintiff would train other attorneys in the fields of ethics and procurement.

Danna-Brennan had developed a cross-training program, approved by Elson and Meyer, which was designed to carry out this transition in the Chicago office. Plaintiff's sole responsibility previously had been ethics and procurement, and under the restructuring, these duties were to be shared with three other attorneys in the Chicago office. In exchange, Plaintiff was now responsible for a wide range of administrative responsibilities such as space and file management, training, and orientation through working groups. In addition, the procurement work which had previously been Plaintiff's responsibility was in 2013 moved to a location out-of-state.

During the period of Plaintiff's disability, as a result of her requests for accommodation, the Defendant, through Danna-Brennan and/or the RA Branch, offered Plaintiff a wide variety of

accommodations, including: a compressed work schedule (four ten hour days, two in the office and two at home), the ability to set her schedule to avoid rush hour commutes, voice recognition software, additional paralegal assistance, ergonomic assessment, referral to para-transit resources, and generous leave approval. Essentially, the only accommodation that Defendant declined to allow was her request to work at home all the time. After Plaintiff declined the suggested accommodations in response to her third request, the RA Branch advised her of the procedures for pursuing a reconsideration of her accommodation request. She did not pursue a reconsideration.

As stated in *Vande Zande v. State of Wisconsin Dept. of Administration*, 44 F.3d 538, 545 (7th Cir. 1995), there is no requirement that an employer allow an employee to work full time unsupervised at home, where productivity must inevitably be reduced. This requirement can be ameliorated by the allowance of medical or annual leave to provide full pay where the employee cannot truly make it to the work place. Perhaps an argument could be made that Plaintiff, due to her long experience in doing the legal work for ethics and procurement, could perform this work at home unsupervised prior to the restructuring, but Defendant has made a more that credible showing that her attendance at the workplace was necessary to carry out the transition training

necessitated by the restructuring. The accommodations offered were reasonable: being able work two to three days at home with the flexibility to commute on the other days, and the right to utilize medical or annual leave for the days where she could not for physical reasons make it to the office. It should also be noted, in response to Plaintiff's argument that her need for physical therapy prevented her in-office work, there are a host of physical therapy sites in close proximity to Plaintiff's workplace. It is important to note that Plaintiff did not lose a single day of pay during this whole ordeal. The Court finds as a matter of law that Defendant offered Plaintiff reasonable accommodations for her disability. The Motion for Summary Judgment is thus granted as to Counts I, III, and IV.

## B.  Reprisal Claims

The law forbids employers from retaliating against employees who assert their right under the respective employment laws. To prove her reprisal claims, Plaintiff must show (1) she engaged in protected activity, (2) she suffered a materially adverse employment action, and (3) there was a causal connection between the two. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013). Here, Plaintiff engaged in protected activity: she filed two EEO complaints alleging that she was passed over for promotion because of age, and she made requests for accommodations

because of her disability.  However, her claims fail because she is unable to show that her claimed reprisals were causally connected to her protected activities.

The standard for a materially adverse employment action in the reprisal or retaliation context is broader than the standard for Title VII employment discrimination claims.  In the latter, the alleged adverse action must materially alter the terms and conditions of employment, while in the former, it must be such as to dissuade a reasonable employee from making a charge of discrimination or otherwise exercise rights under the employment statute in question. *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 661(7th Cir. 2005).  Changes in workload or assignments that do not significantly alter job responsibilities or cause loss of income, do not normally constitute materially adverse employment actions, *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007), unless imposed, for example, to exploit a vulnerability, such as was the case in *Washington*,420 F.3d at 661.

Plaintiff's main complaints against Defendant and, more specifically Danna-Brennan, stem from the decision made by HUD, prior to hiring Danna-Brennan, to restructure, and Danna-Brennan's means of carrying out the restructuring.  Her (and the RA Branch's) denial of an accommodation allowing Plaintiff to work full time at home, resulted from the change in her working conditions brought

about by the restructuring.  It is obvious that cross-training and collaboration with other employees cannot be accomplished from the employee's home.

Added to this was an obvious conflict in personalities between Plaintiff and Danna-Brennan.  For years Plaintiff had been permitted to schedule her work hours to allow her to have four-day weekends.  Danna-Brennan felt that this was manipulating the system and she utilized her prerogative as supervisor to put a limit to it.  As might be expected, this did not sit well with Plaintiff.  What followed was a series of confrontations between Danna-Brennan and Plaintiff that resulted in the five actions Plaintiff complains of in Counts V through IX.  Based on the exchange of lengthy e-mails between Danna-Brennan and Plaintiff, Danna-Brennan had plenty of matters to complain about such as missed meetings and deadlines and failure to appear at the office as instructed.  While Plaintiff painstakingly outlined in e-mails her disagreements with the various complaints and criticisms about her work presented by Danna-Brennan, this does not prove that the complaints and criticisms that resulted in the five actions, were causally related to her EEO complaints or to her accommodation requests.  What is obvious in this case is that there is absolutely no evidence, other that Plaintiff's own self-serving affidavit and her deposition, to create or support an inference that these so-

called adverse actions resulted from her protected activities rather than from Danna-Brennan's honest belief in their legitimacy or from Danna-Brennan's personal dislike of Plaintiff, or from Danna-Brennan's shortcomings as a boss.

The only alternative theory Plaintiff might have pursued to prove her claims of reprisal could have been through what is commonly referred to as the indirect method, *i.e.,* a demonstration that employees who had not pursued protected activity were received more favorable treatment. *See, e.g., Harper v. C.R. England, Inc.*, 687 F.3d 297, 308 (7th Cir. 2012). However, Plaintiff was asked in discovery to identify similarly-situated employees who were treated more favorably than her, but she failed to do so. Therefore, the so-called indirect method of proving her case is waived.

In summary, all the five specific actions complained of in Counts V through IX, were adequately explained by Danna-Brennan contemporaneously to their imposition. These explanations were countered exhaustively by Plaintiff in e-mails to Danna-Brennan. Plaintiff was advised that she had the right to grieve her loss of telework in Danna-Brennan's June 2014 decision, but failed to do so. She appealed the three-day suspension meted out by Danna-Brennan and was successful in having it reduced to one day. As in the case of *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 464 (7th

Cir. 2014), Plaintiff has done nothing more than proffer her own assessment of the Defendant's action to prove their illegality. As that court stated, a court "is not a supra-personnel department that second-guesses employer policies that are facially legitimate. 'It is not the court's concern that an employer may be wrong about its employee's performance or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.'" *Id.* Plaintiff has failed to prove there was any evidence such as a single remark, e-mail, comment or statement of any employee of Defendant, produced by Plaintiff that would suggest that any of the actions complained of by Plaintiff were caused by or related to the protected activity. She further failed to produce any evidence from any third party that would in any manner corroborate her complaints. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). Therefore, the Motion for Summary Judgment on Counts V, VI, VII, VIII, and IX is granted.

### C. Hostile Work Environment Claim

In Count II, Plaintiff claims that all the above complaints made in Counts V through IX and as further described in paragraphs 115 and 116 of her Complaint, constituted a hostile work environment. To survive summary judgment such a claim requires sufficient evidence demonstrating (1) the work environment was

both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Boss*, 816 F.3d at 920.

For the reasons stated previously in this opinion relating to Counts V through IX, Plaintiff has failed to show that these actions were taken in retaliation for her protected activities, instead of for some other reason unrelated to her protected activities, such being justified or perceived by Danna-Brennan to be justified. Accordingly, the Court grants the Motion for Summary Judgment on Count II.

### III.  CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment is granted in its entirety.  The Complaint is dismissed.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:  10/23/2018